*In re* SAÚL DUPREY MAESE.

*Número:* 4507        *Resuelto:* 25 de enero de 1990

Govén D. Martínez Surís, Director de la Oficina de Inspección de Notarías; Saúl Duprey Maese, pro se.

PER CURIAM: El Director de la Oficina de Inspección de Notarías, Lic. Govén D. Martínez Surís, nos informó mediante Memorando de 7 de noviembre de 1989 que del exa-

men de la obra notarial del notario del epígrafe se desprende que éste dejó de adherir y cancelar en los asientos de afidávit los sellos de la Sociedad para Asistencia Legal, según lo exigido por la Ley Núm. 47 de 4 de junio de 1982 (4 L.P.R.A. secs. 896–899), para un total de $901. Añade el Director que está tratando esta situación desde el 8 de septiembre de 1987 y el licenciado Duprey Maese no ha corregido las deficiencias señaladas.(1)

El 30 de noviembre de 1989 le concedimos un término al notario para corregir las deficiencias y mostrar causa por la cual no debía ser separado del ejercicio del notariado por haber cometido la falta antes reseñada.

En virtud de dicha orden, el licenciado Duprey Maese procedió a adherir y cancelar la cantidad de $901. El notario aduce como defensas o justificación de su proceder que:

> Me explico. Tengo que aceptar, sin excusas, que al momento de surgir la incautación de mis protocolos, faltaba la cantidad en sellos que señala el Inspector de Notarías. No obstante, sin que se tome como excusa, ya que admito el error señalado, la reparación de dicho error, en mi caso, se hizo sumamente difícil, ya que se recogieron mis protocolos sin darme oportunidad de completar los sellos que faltasen de adherir y cancelar y así cumplir cuando el Inspector inspeccionara dichos protocolos, que abarcaban varios años.
>
> Aunque reconozco que no es lo más correcto y *de dárseme la oportunidad, estoy seguro que no incurriría más en la misma falta*, la práctica de la mayor parte de los notarios, es retener los sellos de asistencia legal sin adherir ni cancelar hasta que se les avise de la visita del Inspector de Notarías. Repito que reconozco que no es la mejor práctica ni lo que se

---

(1) El examen se practicó como consecuencia de este Tribunal haber ordenado que el Alguacil se incautara de la obra notarial del abogado, por haber éste continuado ejerciendo la notaría a pesar de no haber prestado la fianza notarial y estar suspendido del ejercicio de la abogacía desde 1984. *In re Duprey Maese*, 119 D.P.R. 478 (1987). El 3 de marzo de 1988 ordenamos su reinstalación como abogado, *In re Duprey Maese*, 120 D.P.R. 565 (1988). En octubre de 1988 fue admitido al ejercicio de la notaría.

supone que se haga, no obstante así se hace y en estos momentos este servidor está pagando por ello.

En adición a lo que estamos apuntando en los párrafos anteriores nuestra situación se agravó por el hecho de que estuvimos suspendidos de la profesión por espacio de ocho (8) meses, previa publicación de dicha suspensión, incluso en el periódico El Vocero, hasta que en marzo de 1988, pudimos acreditar, mediante varios escritos, declaración jurada y recibos, nuestro pago parcial de las cuotas al Colegio de Abogados y nos fue levantada la suspensión ordenada en agosto de 1987. Moción informando cumplimiento de orden al Tribunal Supremo, 29 de diciembre de 1989, pág. 3.

■ Las dificultades económicas y profesionales invocadas por el promovido no lo eximen de la sanción disciplinaria correspondiente. *In re Nieves Rivera*, 124 D.P.R. 803 (1989).

■ En *Mojica Sandoz v. Bayamón Federal Savs.*, 117 D.P.R. 110, 133–134 (1986), expusimos como guía en estas situaciones que:

De acuerdo con la mecánica contemplada en la ley, la mejor práctica de la notaría es que se dé entrada inmediata en el Registro de Afidávit de todos los datos requeridos, y se adhiera y cancele el sello. Por estar interrelacionadas, la operación debe ser contemporánea, esto es, que sea lo más próxima posible al acto de autenticación de la firma. Frente a esta norma general visualizamos que solamente serían admisibles dilaciones justificadas fundadas en poderosas razones excepcionales, tales como haber el notario autenticado el documento fuera de su oficina, enfermedad subsiguiente u otras situaciones o emergencias impredecibles. Aclaramos, sin embargo, que el elemento de contemporaneidad es continuo y crucial.

Por imperativo circunstancial e interacción armoniosa de la disposición legal que exige del notario la confección del Índice Notarial y su notificación semanal todos los lunes a la Oficina de Inspección de Protocolos y Notarías, es obvio que inexorablemente ese día sería el término máximo para cumplirse

con todos los requisitos mencionados. Así cobra plena vigencia y alcance el Íncide. Dicho de otro modo, aun en circunstancias justificadas, a más tardar de cada lunes deberá estar debidamente lleno el Registro de Afidávit y cancelados los sellos de la Sociedad para Asistencia Legal.

Esta interpretación es corolario de la naturaleza intrínseca de la información que debe incluirse en el Índice. Aun cuando no es idéntica, la certificación del notario al rendirlos, conceptualmente guarda cierta equivalencia a una dación de fe. Esta solución representa un adecuado balance entre la excelencia y mejor práctica notarial y armoniza con todos los propósitos e intereses legislativos, inclusive el propiciar allegar fondos de la forma más rápida y regular posible a la Sociedad para Asistencia Legal.

■ Por otro lado, hemos reiterado en múltiples ocasiones que la obligación de cancelar sellos en los instrumentos públicos es de estricto cumplimiento y su omisión expone al notario a sanciones disciplinarias. *In re Ralat Pérez*, 124 D.P.R. 745 (1989); *In re Figueroa Abreu*, 124 D.P.R. 810 (1989).

■ No podemos validar como excusa la práctica de los notarios de no cancelar los sellos hasta que el Inspector de Notarías le notifica que va a inspeccionar su obra notarial. La razón para tal rechazo es tan evidente que no amerita ulterior análisis. Si algún notario todavía sigue esa costumbre, sirva la presente como un apercibimiento adicional de su improcedencia.

Vistas las circunstancias concurrentes, *se suspenderá al licenciado Duprey Maese del ejercicio de la notaría por un término de dos (2) años.*

El Juez Presidente Señor Pons Núñez no intervino.